IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

ALAN W. STAATS and
BARBARA A. STAATS,

                   Plaintiffs,

v.                                        Civil Action No. 3:10-CV-68
                                        (BAILEY)

BANK OF AMERICA, N.A.,
d/b/a BANK OF AMERICA HOME LOANS, et al.,

                   Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Currently pending before the Court is the defendants' Motion for Judgment on the Pleadings [Doc. 37], filed on September 22, 2010.  The plaintiffs responded on October 12, 2010, and the defendants replied on October 21, 2010.  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendants' motion should be **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

**I.**    <u>**Factual History**</u>

According to the plaintiffs, Alan and Barbara Staats, this case arises out of the practice often characterized as predatory lending. ([Doc. 36] at ¶ 1).  In support of this claim, the plaintiffs allege the following in the challenged Amended Complaint [Doc. 36].

In May 2007, the plaintiffs owned their home in Harpers Ferry, West Virginia, free and clear after it was gifted to them by plaintiff Barbara Staats' mother.  (Id. at ¶¶ 2(a),

6(a)).   At that time, the plaintiffs were looking to borrow around $80,000 for home improvements, including a new roof, new windows, a bedroom and bath, and an electrical wiring update.   (Id. at ¶ 7).   After filling out an online loan application, Plaintiff Barbara Staats was contacted by a loan agent from Countrywide Home Loans, Inc. ("Countrywide"). (Id. at ¶ 8).   Though the plaintiffs informed Countrywide they were only seeking to borrow $80,000 for home improvements, Countrywide pressured the plaintiffs into consolidating nearly $50,000 of unsecured debt into the mortgage loan transaction at issue.   (Id. at ¶ 11). Countrywide represented that the monthly payment, including escrow amounts, would be $717.45.   (Id. at ¶ 12(b)).

The plaintiffs were then contacted by closing agent, Francis J. Houston, who directed them to meet him at a Wendy's fast food restaurant in Martinsburg, West Virginia. (Id. at ¶ 12).   Houston stated that the restaurant was convenient for him because it was located close to his residence.   (Id.).   The closing was very brief, lasting less than fifteen minutes.   (Id. at ¶ 13(a)).   The plaintiffs were given little to no explanation of the documents they were signing, were merely instructed to sign and initial, and were given no meaningful opportunity to ask questions.   (Id. at ¶ 13(b)-(c)).   There were also inaccuracies in the closing documents.   (Id. at ¶ 14).   For example, the closing did not take place in Pittsburgh, Pennsylvania, as indicated on the settlement statement.   (Id. at ¶ 14(a).   Moreover, the Deed of Trust signed by and provided to the plaintiffs at the closing contained no property description.   (Id. at ¶ 14(b)).

Upon receiving their first billing statement, the plaintiffs realized that the monthly payment, including escrow amounts, was over $100 more than the monthly payment represented by Countrywide during solicitation.   (Id. at ¶ 15).   The plaintiffs made payments

for one and a half years until Plaintiff Alan Staats experienced a slow down at his job as a truck driver.  (Id. at ¶ 16).

By letter dated April 17, 2009, BAC Home Loans Servicing, LP ("BAC"), represented to the plaintiffs that it would work with them to consider alternatives to foreclosure.[1]  (Id. at ¶ 20(a)).  In response, the plaintiffs applied with BAC for a loan modification.  (Id. at ¶ 20(b)).  BAC informed the plaintiffs that they would receive a decision letter in four weeks.  (Id. at ¶ 21(a)).  BAC represented that while the plaintiffs' loan modification application was under review foreclosure would not occur.  (Id. at ¶ 21(c)).  BAC instructed the plaintiffs not to send any payments.  (Id.).

In May 2009, having not received a decision, the plaintiffs called BAC to inquire regarding the status of their application.  (Id. at ¶ 22(a)).  BAC informed the plaintiffs that it was behind in processing loan modification requests because of the large number of pending applications.  (Id. at ¶ 22(b)).  In June 2009, the plaintiffs called BAC twice to inquire about their application and whether they should send payments.  (Id. at ¶ 23(a)).  BAC instructed the plaintiffs not to send any payments and to wait for a response.  (Id. at ¶ 23(b)).  On June 26, 2009, the plaintiffs called BAC again only to be informed that it had no application for them on file and directed to file a new application.  (Id. at ¶ 24(a)).  During this phone call, a BAC representative who called herself "Shantace" related to the plaintiffs that their call prevented foreclosure and that resubmitting a loan modification request "would take care of everything."  (Id. at ¶ 24(b)).  The plaintiffs did as directed, and in July

---

[1]According to the plaintiffs, paragraphs 12 and 13 of the Deed of Trust granted BAC discretion, on behalf of Fannie Mae, to enter into forbearance or modification agreements with them without waiving any rights under the agreement.  (Id. at ¶ 18).

2009, called BAC to inquire regarding the status of their second application.  (Id. at ¶ 25).  BAC informed the plaintiffs that their persistent calls were holding up the process, and instructed the plaintiffs to wait for a response.  (Id.).  Without issuing a response to the plaintiffs' loan modification request, BAC foreclosed on their home on December 17, 2009.  (Id. at ¶¶ 26-27).

## II.   Procedural History

On February 19, 2010, the plaintiffs filed suit in the Circuit Court of Jefferson County, West Virginia, against Bank of America, N.A. f/k/a Countrywide Home Loans, Inc.[2] ("Countrywide") (Lender); Francis J. Houston ("Houston") (Closing Agent); BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC") (Servicer); and Federal National Mortgage Association ("Fannie Mae") (Holder).  On July 9, 2010, the above-captioned defendants removed this case to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 1].[3]  With leave of the Court, the plaintiffs filed an Amended Complaint [Doc. 36] on September 17, 2010.  The Amended Complaint contains seven counts, stating the following claims:   (1) unconscionable inducement, (2) fraud, (3) joint venture and agency, (4) breach of contract, (5) illegal debt collection, (6) negligent misrepresentation, and (7) estoppel.

_____

[2]According to the defendants, Bank of America, N.A. is not formerly known as Countrywide Home Loans, Inc.  Instead, they are separate entities.  ([Doc. 1] at 1, n. 1).

[3]Specifically, complete diversity arose when the circuit court dismissed Houston, the purported closing agent.  This Court subsequently denied the plaintiffs' motion to set aside Houston's dismissal [Doc. 25].

In Count I, the plaintiffs allege that Defendant Countrywide[4] unconscionably induced them, as unsophisticated consumers, into the subject loan by misrepresenting the monthly payment amount.  ([Doc. 36] at ¶¶ 34-35).  The focus of this claim is the closing, which the plaintiffs claim was conducted in such a manner that they could not have reasonably discovered that the monthly payment would be higher than represented, namely that: (1) the closing agent refused to provide explanation regarding the loan's terms; (2) the closing was conducted in a public place – a fast food restaurant; (3) the closing agent lacked the professional ability to conduct the closing in a commercially acceptable manner; and (4) the closing was conducted in an uninformative, intimidating, and rushed manner, which resulted in the pressuring of the plaintiffs into executing the loan documents.  (Id. at ¶ 36).  This unconscionable conduct resulted in unfair terms, including a monthly payment amount over $100 higher than represented.  (Id. at ¶¶ 15(b), 37).

In Count II, the plaintiffs allege that Defendant Countrywide defrauded them by intentionally misrepresenting and suppressing the terms of the transaction at issue, namely the monthly payment amount.  (Id. at ¶ 40).  These misrepresentations were material and induced the plaintiffs to enter into the loan.  (Id. at ¶ 41).  The plaintiffs' reliance on these misrepresentations was reasonable under the circumstances.  (Id. at ¶ 42).

In Count III, the plaintiffs allege that the defendants acted in furtherance of a joint venture and by means of principal-agent relationships.  (Id. at ¶¶ 44-51).  With regard to joint venture, the plaintiffs allege that each defendant had an agreement for a single

---

[4]Though the plaintiffs direct Count I toward the "Defendants," the Parties and Statement of Facts sections of the Amended Complaint as well as the fraud count indicate the plaintiffs' intent to direct Count I toward Defendant Countrywide, as the originating lender.  (See [Doc. 36] at ¶¶ 3,  7-11, & 38-43).

business enterprise, namely the closing and servicing of the subject loan.  (Id. at ¶ 46).

Each defendant also shared in the profits and/or losses of the single business enterprise.

(Id. at ¶ 47).  The defendants combined their money, skill, and/or knowledge to carry out

this single business enterprise.  (Id. at ¶ 48).  With regard to agency, the plaintiffs allege

that Defendant Countrywide exercised a degree of control over the loan closer in carrying

out this business enterprise, and that the closer acted as agent for Defendant Countrywide.

(Id. at ¶¶ 49, 51).  Likewise, the plaintiffs allege that Defendant Fannie Mae exercised a

degree of control over Defendants Countrywide and BAC in carrying out this business

enterprise, and that the latter defendants acted as an agent for the former.  (Id. at ¶ 50, 51).

In Count IV, the plaintiffs allege that the defendants breached the loan contract and

the implied duty of good faith and fair dealing by: (1) failing to exercise their discretion in

good faith to effectuate reasonable and appropriate loss mitigation options before

accelerating the loan and pursuing foreclosure; (2) failing to exercise their discretion in

good faith to initiate loss mitigation efforts with the plaintiffs when they fell behind; (3)

allowing the plaintiffs' delinquency to mount by discouraging payments, while prolonging

the loan modification review process; and (4) exercising their discretion to accelerate the

loan and pursue foreclosure in bad faith.  (Id. at ¶ 55).

In Count V, the plaintiffs allege that Defendant BAC, in attempting to collect on the

loan in question, made fraudulent, deceptive, and misleading representations, in violation

W.Va. Code § 46A-2-127.  (Id. at ¶ 59).  Specifically, the plaintiffs allege that Defendant

BAC instructed them not to make loan payments, while refusing to evaluate them for a loan

modification and repeatedly representing that it would provide an affordable loan

modification.  (Id.).

In Count VI, the plaintiffs allege that Defendant BAC made negligent misrepresentations in connection with their loan modification application.  (Id. at ¶¶ 60-69). First, Defendant BAC owed a duty to the plaintiffs to provide them with accurate information about the status of their loan account and their options.  (Id. at ¶ 61).  Next, Defendant BAC represented to the plaintiffs that their loan would not be acted upon while their loan modification request was under review, that they should not make loan payments in the meantime, and that it would work to provide them with a loan modification in lieu of foreclosure.  (Id. at ¶¶ 62-63).  These representations were false, negligent, and material. (Id. at ¶¶ 64-66).  The plaintiffs reasonably relied upon these representations to their detriment when their delinquency mounted, their home was scheduled for foreclosure, and they were not considered for an affordable loan modification.  (Id. at ¶ 67).  Defendant BAC intentionally foreclosed on the plaintiff's property despite representations that this would not occur during the loan modification process.

In Count VII, the plaintiffs allege that Defendant BAC was estopped from foreclosing on their home after instructing the plaintiffs not to make loan payments and representing that foreclosure would not occur while their loan modification request was pending.  (Id. at ¶¶ 70-74).

On September 22, 2010, without answering the Amended Complaint, the defendants filed the pending Motion for Judgment on the Pleadings [Doc. 37].  In their motion, the defendants argue that the plaintiffs have failed to state a claim upon which relief may be granted.  ([Doc. 37] at 2).  First, the defendants contend that Counts I and V are preempted insofar as they are "origination" and "servicing" claims that "obstruct, impair, or condition"

7

a national bank's authorized real estate lending powers.  (Id. at 2-3).  Next, the defendants argue that Counts IV, VI, and VII fail to state claims upon which relief may be granted because Defendant BAC merely exercised its express right under the Deed of Trust to consider alternatives to foreclosure and to foreclose on the plaintiffs' property upon default. (Id. at 3-4).  Alternatively, the defendants argue that those counts are barred by the statute of frauds, and that the plaintiffs' negligent misrepresentation claim (Count VI) is barred by the economic loss rule.  (Id. at 4).  Moreover, insofar as the plaintiffs admit that they first discovered their monthly loan payment was more than expected when they received their first billing statement in 2007, the defendants claim that the fraud claim in Count II is barred by the two-year statute of limitations.  (Id. at 4).  Finally, the defendants argue that the plaintiffs failed to allege sufficient facts to survive dismissal of their joint venture and agency claim (Count III).  (Id.).

On October 12, 2010, the plaintiffs filed a Response [Doc. 41], arguing that they have sufficiently stated claims upon which relief may be granted.  First, the plaintiffs argue that Counts I and V are not preempted.  (Id. at 8-9).  With regard to their unconscionable inducement claim (Count I), the plaintiffs argue that preemption cannot apply insofar as the originating lender, Defendant Countrywide, is a West Virginia state-licensed lender, not a national bank.  (Id. at 9-11).  As for their illegal debt collection claim (Count V), the plaintiffs argue that said claim is preserved from preemption.  (Id. at 15-16).  Next, the plaintiffs assert that insofar as their fraud claim (Count II) seeks equitable relief, it is not barred by the two-year statute of limitations.  (Id. at 19-20).[5] Moreover, the plaintiffs contend that they

_____

[5]In this regard, however, the plaintiffs abandon their fraud claim (Count II) insofar as it seeks affirmative monetary relief.  (Id. at 19 n.1).

8

have sufficiently pled a claim for joint venture and agency (Count III), emphasizing that whether either relationship exists is a question of fact usually left to the jury.  (Id. at 20-22). Likewise, the plaintiffs argue that they have sufficiently pled a claim for breach of contract (Count IV) based upon the defendants' failure to exercise its discretionary rights in good faith.  (Id. at 22-27).  Further, in regard to this claim, their negligent misrepresentation claim (Count VI), and their estoppel claim, the plaintiffs argue that the statute of frauds does not present a bar because it does not apply to agreements modifying existing written mortgage loan contracts, including deeds of trust.  (Id. at 27-28).  Finally, the plaintiffs argue that the economic loss rule does not bar recovery on their negligent misrepresentation claim (Count VI) because a special relationship exists between Defendant BAC, as servicer, and the plaintiffs, as debtors.  (Id. at 28-31).

On October 21, 2010, the defendants filed a Reply [Doc. 42], reasserting and supplementing their previous arguments.  For example, the defendants refocus their argument in opposition to the unconscionable inducement claim (Count I), arguing that it fails to state a claim on its merits.  ([Doc. 42] at 2).  Moreover, the defendants argue that insofar as the fraud claim (Count II) seeks equitable relief, it is barred by the equitable doctrine of laches.  (Id.).  Finally, the defendants argue that no special relationship exists to support the negligent misrepresentation claim (Count VI), and that there is no cause of action for estoppel (Count VII).  (Id. at 4).

## DISCUSSION

### I.  Motion to Dismiss Standard

"As a threshold matter, it is essential to engage in some procedural housekeeping."

*New York State United Teachers v. Thompson*, 459 F.Supp. 677, 680 (N.D.N.Y. 1978). The defendants have denominated the pending motion as one for judgment on the pleadings pursuant to Rule 12(c).  However, no defendant has filed an answer to the Amended Complaint.  Rule 12(c) specifically provides for motions for judgments on the pleadings "after the pleadings are closed . . .."  Fed. R. Civ. P. 12(c).  By contrast, motions premised upon any of the enumerated defenses set forth in Rule 12(b) "shall be made before pleading . . .."  Fed. R. Civ. P. 12(b).  As such, a Rule 12(c) motion may not be made by a defendant until that defendant has filed an answer, s*ee Dorgan v. International Harvester Co.*, 585 F.2d 1380 (8th Cir. 1978); *Gumer v. Shearson*, 516 F.2d 283 (2d Cir. 1974); *Season-All Indus., Inc. v. Turkiye Sise Ve Cam Fabrikalari, A.S.*, 425 F.2d 34 (3d Cir. 1970), and that answer must be to the most recent version of the complaint.  *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n. 8 (11th Cir. 2002).  Accordingly, the present motion of the defendants shall be considered as a motion to dismiss for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Nevertheless, the question will be the same: whether each count states a claim for relief.  *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Plain v. AT&T Corp.*, 424 F.Supp.2d 11, 20 n. 11 (D.D.C. 2006).

More specifically, in assessing a motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true.  *Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

10

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Mills*, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (May 18, 2009) (internal quotations and citations omitted).

Additionally, a 12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56(c) where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Here, in addition to the Amended Complaint, the parties have presented to the Court nine exhibits: (1) Deed of Trust; (2) Note; (3) New Loan Payment Form; (4) Loan History; (5) E-Mail Communications between Plaintiff's Counsel and the OCC; (6) State Business Organizations Records; (7) January 28, 2004, Congressional Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel of OCC; (8) November 25, 2002, OCC Advisory Letter; and (9) March 22, 2002, OCC Advisory Letter. First, the Court notes that consideration of the Deed of Trust does not convert the motion to dismiss into one for summary judgment. Because the Deed of Trust is referenced in the plaintiffs' Complaint, it is not considered

11

"outside the pleadings." *See **Henschke v. New York Hospital-Cornell Medical Ctr.***, 821 F.Supp. 166 (S.D.N.Y. 1993). Similarly, the Court notes that consideration of the State Business Organization Records, the Congressional Testimony, and the two OCC Advisory Letters does not convert the motion insofar as those documents constitute matters of public record. *See **Oxford Asset Management, Ltd. v. Jaharis***, 297 F.3d 1182 (11th Cir. 2002). However, in consideration of the 12(b)(6) motion, the Court has elected to exclude the other exhibits, making a summary judgment standard inapplicable to the defendants' motion. See Fed. R. Civ. P. 12(d).

## II.  National Bank Act Preemption Standards

The National Bank Act ("NBA") empowers the Office of Comptroller of the Currency ("OCC") to regulate real estate loans made by national banks. 12 U.S.C. § 371(a). Under this authority, the OCC promulgated a preemption regulation in 12 C.F.R. § 34.4 (the "Regulation"), which is entitled to "no less pre-emptive effect than federal statutes." ***Fidelity Fed. Sav. and Loan Ass'n v. de las Cuesta***, 458 U.S. 141, 153 (1982). The Regulation provides that:

> Except where made applicable by Federal law, *state laws* that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers *do not apply to national banks*.

12 C.F.R. § 34.4(a) (emphasis added).

In section 34.4(a), the OCC provided illustrative examples of the types of state laws preempted. "Specifically, a national bank may make real estate loans . . . without regard to state law limitations concerning, *inter alia*:

> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

12

12 C.F.R. § 34.4(a)(10).

Moreover, the OCC expressly provided, in section 34.4(b), categories of state laws that "apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers . . .." 12 C.F.R. § 34.4(b). The subjects listed include contracts and torts among other areas of law traditionally controlled by the states.

Finally, courts addressing the issue of NBA preemption have adopted the analysis outlined by the Office of Thrift Supervision ("OTS") for considering the preemptive effect of a nearly identical regulation promulgated under the Home Owners' Loan Act of 1933 ("HOLA") concerning the application of state laws to federal thrifts. *See e.g., O'Donnell v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 23641, *14 (N.D. Cal. Mar. 15, 2010). The OTS analysis provides, as follows:

> When analyzing the status of state laws under [the Regulation], the first step will be to determine whether the type of law in question is listed in [the Regulation's illustrative examples of the types of state laws preempted]. If so, the analysis will end there; the law is preempted. If the law is not covered [by one of the illustrative examples], the next question is whether the law affects lending. If it does, then . . . the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown [to have, at most, only an incidental effect on lending operations.] Any doubt should be resolved in favor of preemption.

OTS, *Lending and Investment*, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996); *see also Silvas v. E*TRADE Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).

## II.   <u>Analysis</u>

Defendants Countrywide, BAC, and Fannie Mae (the "defendants") move to dismiss all seven counts of the plaintiffs' Amended Complaint. Specifically, the defendants contends that Counts I and V must fail because they are preempted by the NBA and the

Regulation.  According to the defendants, Count II is barred by the statute of limitations. Moreover, the defendants contend that Count III is not supported by sufficient factual allegations.  Finally, the defendants argue that Counts IV, VI, and VII are, *inter alia*, barred by the statue of frauds. The Court will now consider each claim in turn.

## A.    Joint Venture and Agency (Count III)

In their Amended Complaint, the plaintiffs allege that Defendant  BAC acted as an agent for Defendant Fannie Mae.[6]  Specifically, the plaintiffs allege that, "Fannie Mae is the current holder of the Plaintiffs' loan [and] [a]t all times relevant to this action, the loan servicer [BAC] has acted as an agent for . . . Fannie Mae."  ([Doc. 36] at ¶ 5).

In their motion to dismiss, the defendants argue that the plaintiffs have insufficiently pled that an agency relationship existed.  In particular, the defendants contend that the plaintiffs' allegation of agency is conclusory because they have failed to provide any supporting factual allegations.  In response, the plaintiffs argue that they have provided sufficient factual allegations, namely that BAC acted as the servicer of a loan held by Fannie Mae.

Upon careful consideration of the above, the Court finds that the plaintiffs have sufficiently pled that a principal/agent relationship existed between Fannie Mae and BAC. In so finding, this Court considers true, as it must, the plaintiffs' allegation that BAC acted as the servicer of a loan held by Fannie Mae.

In West Virginia, "[t]here are four general factors which bear upon whether a master-

---

[6]The plaintiffs also allege that Defendant Countrywide acted as an agent for Defendant Fannie Mae.  However, insofar as this Order dismisses all claims against Countrywide, the Court finds it unnecessary to decide whether such relationship in fact existed.

servant relationship exists for purposes of the doctrine of *respondeat superior*: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control.  The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." ***Paxton v. Crabtree***, 184 W.Va. 237, 245, 400 S.E.2d 245, 253 (1990).  Stated another way, "one of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." ***Teter v. Old Colony Co.***, 190 W.Va. 711, 720, 441 S.E.2d 728, 737 (1994).  Finally, "[p]roof of an express contract of agency is not essential to the establishment of the relation.  It may be inferred from the facts and circumstances, including conduct." ***General Elec. Credit Corp. v. Fields***, 148 W.Va. 176, 181, 133 S.E.2d 780, 783 (1963).

In the instant case, the plaintiffs allege that BAC serviced a loan held by Fannie Mae, and did so as an agent.  Accepting these allegations as true, the Court finds that BAC could have plausibly acted as Fannie Mae's agent.  Whether Fannie Mae had some degree of control over the conduct and activities of BAC is a question to be answered in discovery.  At this stage, however, the plaintiffs have sufficiently pled the existence of agency.[7]

### B.    Claims Against Defendant Countrywide

In their Amended Complaint, the plaintiffs allege two causes of action against Defendant Countrywide: (1) unconscionable inducement and (2) fraud.  The Court now considers whether the plaintiffs have adequately stated either claim.

---

[7]Insofar as this finding allows Count III to proceed, the Court finds it unnecessary to determine whether the plaintiffs' alternative theory of joint venture has merit.

### 1.    Unconscionable Inducement (Count I)

In Count I, the plaintiffs allege that Defendant Countrywide unconscionably induced them, as unsophisticated consumers, into the subject loan by misrepresenting the monthly payment amount.  In moving to dismiss this claim, the defendants argue, *inter alia*, that the plaintiffs have failed to state a claim for unconscionability because the payment term is reflected in the plain and unambiguous language of the loan documents.  For the reasons that follow, the Court instead dismisses the plaintiffs' unconscionable inducement claim for its untimeliness.

The plaintiffs have cited no authority, and the Court is aware of none, for the proposition that West Virginia law recognizes a common law cause of action for unconscionable inducement.  In fact, the case law appears to weigh toward the opposite conclusion.  For example, in holding that West Virginia does not recognize a common law cause of action for "predatory lending," the Honorable John T. Copenhaver, Jr., explained that "[i]n West Virginia, unscrupulous lending practices give rise to claims under the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-1-101, *et seq.* ("WVCCPA")."  ***Thaxton v. Novastar Mortgage, Inc.***, 2006 U.S. Dist. LEXIS 21912, *9 (S.D. W.Va. Apr. 20, 2006).  Of particular import, Judge Copenhaver advised that "plaintiffs may assert *unconscionability* claims under § 46A-2-121 of the WVCCPA.  ***Id.*** (emphasis added).  Under that section, a court may refuse to enforce a loan agreement if the agreement was "induced by unconscionable conduct."  W.Va. Code § 46A-2-121(1)(a).

Viewing the plaintiffs' allegations in a most favorable light, the Court will construe the plaintiffs' unconscionable inducement claim as one arising under § 46A-2-121(1)(a).

16

However, insofar as claims under that section are governed by a one-year statute of limitations, *see* W.Va. Code § 46A-5-101, the Court will dismiss the plaintiffs' unconscionable inducement claim as untimely.  Specifically, the Deed of Trust reflects that the plaintiffs entered into the loan on June 23, 2007.  Assuming *arguendo* that the discovery rule applies, the plaintiffs discovered the higher-than-expected monthly payment upon receiving their first statement in July 2007.  The plaintiffs instituted this action over two and a half years later, on February 19, 2010.  Accordingly, the Court hereby **DISMISSES** Count I (Unconscionable Inducement).

### 2.    Fraud (Count II)

In Count II, the plaintiffs allege that Defendant Countrywide defrauded them by intentionally misrepresenting and suppressing the terms of the transaction at issue, namely the monthly payment amount.  In responding to the defendants' motion, the plaintiffs voluntarily withdrew their fraud claim insofar as it seeks monetary relief, conceding that it is barred by the two-year statute of limitations in W.Va. Code § 55-2-12.  Nevertheless, the plaintiffs argue that their fraud claim may proceed insofar as it seeks equitable relief.  The defendants counter that the equitable component of the plaintiffs' fraud claim is barred by the equitable doctrine of laches.  This Court agrees.

The well-established principle that "equity follows the law" creates a presumption that a defendant would be prejudiced by a plaintiff's failure to bring an equitable claim within the statute of limitations applicable to an analogous action at law.  *See **Consolidation Coal Co. v. Consolidation Coal Co., Inc.**,* 228 F.Supp.2d 764, 768-69 (N.D. W.Va. 2001) ("Under equitable principles the statute of limitations applicable to analogous actions at law

is used to create a 'presumption of laches.' This principle 'presumes' that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period.") (quoting **Tandy Corp. v. Malone & Hyde, Inc.**, 769 F.2d 362, 365 (6th Cir. 1985)).   In West Virginia, a fraud claim at law is governed by the two-year statute of limitations in W.Va. Code § 55-2-12.

As established above, the plaintiffs brought their fraud claim over two and a half years after discovering the amount of their monthly payment.  As such, the Court presumes that Defendant Countrywide would be prejudiced by allowing the plaintiffs to seek equitable relief on their fraud claim.  Accordingly, the Court hereby **DISMISSES** Count II (Fraud).

### C.    Claims Against Defendant BAC

In their Amended Complaint, the plaintiffs allege four causes of action against Defendant BAC: (1) breach of contract, (2) illegal debt collection, (3) negligent misrepresentation, and (4) estoppel.  The Court now considers whether the plaintiffs have adequately stated any of these claims.

#### 1.    Breach of Contract (Count IV)

In Count IV, the plaintiffs allege that Defendant BAC, acting as an agent for Defendant Fannie Mae, breached the covenant of good faith and fair dealing implied in the Deed of Trust by, *inter alia*: (1) exercising Fannie Mae's discretion to provide a loan modification in bad faith and (2) exercising Fannie Mae's discretion to foreclose in bad faith.

In West Virginia, a covenant of good faith and fair dealing is implied in every contract for the purposes of evaluating a party's performance of that contract.  **Knapp v. American General Finance, Inc.**, 111 F.Supp.2d 758, 767 (S.D. W.Va. 2005); **Hoffmaster v.**

18

*Guiffrida*, 630 F.Supp. 1289, 1290 (S.D. W.Va. 1986). "When a contract confers discretion on one of the parties that affects the rights of the other, that discretion must be exercised in a reasonable manner based upon good faith and fair play." ***Strategic Outsourcing, Inc. v. Cont'l Cas. Co.***, 274 Fed.Appx. 228 (4th Cir. 2008) (internal quotations and citations omitted). West Virginia law does not recognize an independent cause of action for a breach of duty of good faith and fair dealing separate and apart from a breach of contract claim. ***Stand Energy Corp. v. Columbia Gas Transmission Corp.***, 373 F.Supp.2d 631, 644 (S.D. W.Va. 2005). In so recognizing, the court in ***Stand*** cited ***Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.***, 299 F.Supp.2d 505, 518 (D. Md. 2004), which found that "[a]lthough a plaintiff may state a claim for breach of contract under Michigan law [based upon] a breach of the implied duty of good faith and fair dealing, breach of the duty does not supply an independent cause of action . . .." Relying in part on this favorable citation, this Court has found that "under West Virginia law a plaintiff can allege a valid claim for breach of contract, *alleging as the grounds for recovery* that defendant breached its duty of good faith and fair dealing." ***Manning v. Wells Fargo, N.A., et al.***, Civil Action No. 1:09-CV-83, Order Denying in Part and Granting in Part Defendant's Motion to Dismiss, pp. 10-11 (N.D. W.Va. Sept. 24, 2009) (emphasis in original).

Upon careful consideration of the above, the Court finds that the plaintiffs have stated a valid breach of contract claim, alleging as the grounds for recovery, that the defendants breached the implied covenant of good faith and fair dealing. Specifically, the plaintiffs have sufficiently alleged that the defendants exercised their discretion to deny a

loan modification and instead seek foreclosure in bad faith.

The plaintiffs allege that the Deed of Trust granted Fannie Mae (holder) the discretion to grant a loan modification instead of seeking foreclosure.  The plaintiffs allege that BAC, by letter dated April 17, 2009, represented to them that it would consider alternatives to foreclosure.  The plaintiffs further allege that, in response, they applied with BAC for a loan modification.  BAC requested the plaintiffs' financial information and informed them that they would receive a decision letter in four weeks.  In the meantime, and on more than one occasion, BAC instructed the plaintiffs not to send any payments and advised them that no action would be taken while their modification request was under review.  The plaintiffs never received a response from BAC regarding their loan modification request.  Instead, on December 17, 2009, BAC foreclosed.  Considering these allegations in a light most favorable to the plaintiffs, the Court finds that the plaintiffs have sufficiently alleged a breach of contract claim based upon the implied covenant of good faith and fair dealing to survive a 12(b)(6) motion to dismiss.[8]   Accordingly, Count IV (Breach of Contract) **MAY PROCEED** insofar as it is based upon the implied covenant of good faith and fair dealing.

---

[8]The Court notes that any argument by the defendants that their express right to foreclose trumps the implied duty to exercise their discretion in good faith is properly construed as a defense not before this Court on a 12(b)(6) motion to dismiss.  In this regard, the Court further notes that, upon the completion of discovery, the plaintiffs' burden of presenting a genuine issue of material fact on the issue of bad faith will be a heavy one.  *See **Benito v. Indymac Mortg. Serv.**, 2010 WL 2130648, *7 (D. Nev. May 21, 2010) (granting summary judgment in favor of defendant on nearly identical implied covenant of good faith and fair dealing claim because, "No contract term in the loans required OneWest to engage in loan modification, and it would not breach the covenant for OneWest to refuse to take on an additional obligation it was not required to undertake in the contract itself.").

### 2.      Illegal Debt Collection (Count V)

In Count V, the plaintiffs allege that Defendant BAC made fraudulent, deceptive, and misleading representations in violation of W.Va. Code § 46A-2-127 by instructing them not to make payments toward their debt, while refusing to evaluate the plaintiffs for a loan modification and repeatedly representing that it would provide an affordable loan modification.  The defendants argue that this claim is preempted by the NBA and the regulations promulgated thereunder as a "servicing" claim that "obstructs, impairs, or conditions" of a national bank.  For the reasons that follow, this Court agrees.

First, the Court finds that BAC is an "operating subsidiary" of Bank of America, N.A. ("BofA"), as defined in 12 U.S.C. § 24a(g)(3)(A).  As such, BAC deserves the same preemption protection BofA would receive.  Second, the Court agrees that restricting the content of BAC's communications with a borrower in considering a potential loan modification implicates the "processing" and "servicing" of mortgages by the operating subsidiary of a national bank.  *See* 12 C.F.R. § 34.4(a)(10).  On this basis alone, preemption is warranted.  In other words, no discussion of the effect of W.Va. Code § 46A-127 is necessary because it falls within a category of state laws that is expressly preempted.  Accordingly, the Court hereby **DISMISSES** Count V (Illegal Debt Collection).[9]

---

[9]In regard to the plaintiffs' argument that W.Va. Code § 46A-2-127 is not preempted because it does not *conflict* with federal law (applying a conflict preemption analysis), the Court responds as follows.  First, the Court notes that the Fourth Circuit has not yet given guidance regarding the proper NBA preemption analysis that district courts should apply.  Second, the only Court of Appeals to do so, the Ninth Circuit, explained that the conflict preemption analysis is proper in NBA cases yet, in essence, applied a field preemption analysis to find that a provision of California's counterpart to the WVCCPA was preempted by 12 C.F.R. § 34.4(a).  *See **Martinez v. Wells Fargo Home Mortg., Inc.**,* 598 F.3d 549 (9th Cir. 2010).  Thus, this Court has merely followed the lead of the Ninth Circuit, applying what appears to be the express language of section 34.4.(a).

### 3.    Negligent Misrepresentation (Count VI)

In Count VI, the plaintiffs allege that Defendant BAC made negligent misrepresentations in connection with their loan modification application, which breached its duty to provide the plaintiffs with accurate information about the status of their loan account and their options.  In arguing that this claim should be dismissed, the defendants assert that no special relationship exists between Defendant BAC, as servicer, and the plaintiffs, as borrowers, sufficient to create the duty alleged.  This Court agrees.

In West Virginia, a plaintiff "cannot maintain an action in tort for an alleged breach of a contractual duty." **Lockhart v. Airco Heating & Cooling**, 211 W.Va. 609, 614, 567 S.E.2d 619, 624 (2002).  Instead, "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the *relationship of the parties*, rather than from a mere omission to perform a contract obligation." *Id.* (emphasis added).  The Supreme Court of Appeals of West Virginia refers to this relationship as a "special relationship." *See e.g.*, **Aikens v. Debow**, 208 W.Va. 486, 499, 541 S.E.2d 576, 589 (2000); **Eastern Steel Constructors, Inc. v. City of Salem**, 209 W.Va. 392, 398, 549 S.E.2d 266, 272 (2001); **Glascock v. City Nat'l Bank of West Virginia**, 213 W.Va. 61, 66, 576 S.E.2d 540, 545 (2002).  As the **Aikens**, **Eastern**, and **Glascock** opinions noted, "[t]he existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general." *Id.*  In the lender-borrower context, courts consider whether the lender has created a "special relationship" by performing services not normally provided by a lender to a borrower.  *See* **Glascock**, 576 S.E.2d at 545-56; **Willis v. Countrywide Home Loans Servicing, L.P.**, 2009 WL

22

5206475, *5 (D. Md. Dec. 23, 2009).

In the instant case, the plaintiffs fail to allege that BAC provided a service not normally provided by a loan servicer. Most of the plaintiffs' factual allegations relate to BAC (servicer), as the plaintiffs seek to hold Fannie Mae (holder) liable under a theory that BAC acted as its agent. For example, the plaintiffs allege that BAC accepted their monthly mortgage payments and discussed their eligibility for a loan modification. Moreover, the plaintiffs allege that BAC foreclosed on their property instead of offering a loan modification. These are services normally provided by a loan servicer for a borrower. As such, the plaintiffs have failed to plead a special relationship which creates a duty sounding in tort. Accordingly, the Court hereby **DISMISSES** Count VI (Negligent Misrepresentation).

### 4. Estoppel (Count VII)

In Count VII, the plaintiffs allege that Defendant BAC was estopped from foreclosing on their home after instructing the plaintiffs not to make loan payments and representing that foreclosure would not occur while their loan modification request was pending. In arguing that this claim should be dismissed, the defendants contend that estoppel is not a cause of action, but an equitable defense. This Court agrees.

The Court is aware of no case law in which West Virginia recognizes estoppel as a cause of action rather than as an affirmative defense. As a defense, equitable estoppel has no place in the plaintiffs' Amended Complaint. Accordingly, the Court hereby **DISMISSES** Count VII (Estoppel).

### <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the defendants' Motion for Judgment

23

on the Pleadings **[Doc. 37]** should be, and hereby is, **GRANTED IN PART** and **DENIED**

**IN PART**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: November 4, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE