IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ALAN W. STAATS and
BARBARA A. STAATS,**

                    Plaintiffs,

**v.**                                                **Civil Action No. 3:10-CV-68
(BAILEY)**

**BAC HOME LOANS SERVICING, LP, and
FEDERAL NATIONAL MORTGAGE ASSOCIATION,**[1]

                    Defendants.

**<u>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Currently pending before this Court is Defendants BAC Home Loans Servicing, LP's and Federal National Mortgage Association's Motion for Summary Judgment [Doc. 63], filed April 22, 2011.  The plaintiffs responded on May 16, 2011 [Doc. 68], and the defendants replied on May 25, 2011 [Doc. 69].  This Court has reviewed the record and the motion and, for the reasons set out below, finds that the defendants' motion should be **GRANTED**.

**<u>BACKGROUND</u>**

**I.**    **<u>Factual History</u>**

    **A.**    **Undisputed Material Facts**

In 2006, the plaintiffs, Alan and Barbara Staats, were gifted the subject property free and clear of any mortgage liens.  (B. Staats Depo. at 8-9).  In 2007, the plaintiffs sought a

---

[1] In its November 4, 2010, Order Granting in Part and Denying In Part Defendants' Motion for Judgment on the Pleadings [Doc. 43], this Court noted that "this Order dismisses all claims against Countrywide."  (Id. at 14 n. 6).  However, the Court failed to order Countrywide Home Loans Servicing, Inc. ("Countrywide") dismissed from this action.  At this time, the Court **DISMISSES** Countrywide and directs the Clerk to adjust the case style in accordance with this Order.

mortgage loan to fund several home improvement projects. (Id. at 9-10). On June 23, 2007, the plaintiffs closed on a mortgage loan by Countrywide Home Loans, Inc. ("Countrywide"). The loan had a starting principal balance of $115,000.00 and a fixed interest rate of 6.375%, which provided for principal and interest payments of $717.45, beginning on August 1, 2007. (Id., Ex. 1, Note). The loan was secured by a Deed of Trust ("DOT") on the plaintiff's property [Doc. 63-2]. Between August and November 2007, the plaintiffs made timely payments of $828.27, an amount which included taxes and insurance. (Payment Hist. at 1). In December 2007, the plaintiffs' loan servicer, BAC Home Loans Servicing, LP ("BAC"), demanded an increased payment of $981.64, which the plaintiffs paid. (Id.).

However, the plaintiffs defaulted on the loan by failing to make the increased payment in January, February, or March 2008. (Id.). As a result, Countrywide sent the plaintiffs a Notice of Right to Cure Default on February 19, 2008, April 3, 2008, and May 7, 2008. (Defs. Exs. 6-8). The last of these notices demanded $2,887.64 by June 6, 2008, to cure the plaintiffs' default. (Id.). On May 12, 2008, BAC invited the plaintiffs to participate in the Home Saver Advance program wherein the holder of the loan, Federal National Mortgage Association ("Fannie Mae"), would advance BAC the funds to bring the plaintiffs current. The plaintiffs accepted, provided the necessary information, and were brought current on June 11, 2008. (Payment Hist. at 5).

In early 2009, the plaintiffs again became delinquent on the loan, prompting BAC to consider the plaintiffs for a loan modification. (Abbatecola Depo. at 20-23). After deciding not to offer a loan modification, BAC foreclosed on the plaintiffs' home on December 17, 2009. (Loan Servicing Hist. at 36).

2

Pursuant to the DOT, "[i]f [a] default is not cured on or before the date specified in the notice, Lender at its option . . . may invoke the power of sale . . .."  (DOT at ¶ 22). However, "Lender and . . . Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the [DOT] . . .."  (Id. at ¶ 13). Nevertheless, "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy."  (Id. at ¶ 12).  Finally, "[i]f Lender invokes power of sale, Lender or Trustee shall give Borrower . . . notice of Lender's election to sell the Property."  (Id. at ¶ 22).

**B.    Disputed Material Facts**

According to the plaintiffs, BAC invited them to participate in the Home Affordable Modification Program ("HAMP") by letter dated April 17, 2009.  ([Doc. 68-2] at 2).  Mrs. Staats contacted a BAC representative who instructed her to provide financial and other information over the telephone, and informed her that she would receive a decision letter via FedEx.  (Id. at 60).  Mrs. Staats also asserts she was told not to make partial payments and promised that failure to do so would not lead to foreclosure.  (Id.).  From April 2009 to December 2009, the plaintiffs were never informed of a decision regarding their loan modification request.  (Id. at 60-62).  Without ever considering a loan modification, BAC foreclosed on December 17, 2009.  (Id.).  Soon thereafter, the plaintiffs received a letter from Fannie Mae dated December 29, 2009, notifying them that they must vacate the property within five days.  (Id. at 64-65).

According to BAC and Fannie Mae, the plaintiffs were considered for loan modifications on two separate occasions. (Abbatecola Depo. 20-23).  In August 2009, BAC reviewed the plaintiffs' account to determine whether they qualified for a traditional loan

modification pursuant to Fannie Mae's workout guidelines.  However, on August 30, 2009, a traditional modification was denied because the plaintiffs did not meet the requisite financial qualifications.  (Loan Servicing Hist. at 16-17, 24).  In November 2009, the plaintiffs were considered for a HAMP modification.  This time, the plaintiffs were denied a modification because they did not qualify under HAMP guidelines.  (Id. at 36).  BAC attempted to contact the plaintiffs on several occasions to advise them that their application for a HAMP loan modification was denied.  (Abbatecola Depo. at 26).  On December 17, 2009, BAC foreclosed.

## II.    Procedural History

On February 19, 2010, the plaintiffs filed suit in the Circuit Court of Jefferson County, West Virginia, against Bank of America, N.A. f/k/a Countrywide Home Loans, Inc.[2] ("Countrywide") (Lender); Francis J. Houston ("Houston") (Closing Agent); BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC") (Servicer); and Federal National Mortgage Association ("Fannie Mae") (Holder).  On July 9, 2010, the defendants removed this case to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 1].[3]  With leave of the Court, the plaintiffs filed an Amended Complaint [Doc. 36] on September 17, 2010.  The Amended Complaint contains seven counts, stating the following origination and servicing claims: (Count I) unconscionable inducement, (Count II) fraud, (Count III) joint venture and agency,

_____

[2]According to the defendants, Bank of America, N.A. is not formerly known as Countrywide Home Loans, Inc.  Instead, they are separate entities.  ([Doc. 1] at 1, n. 1).

[3]Specifically, complete diversity arose when the circuit court dismissed Houston, the purported closing agent.  This Court subsequently denied the plaintiffs' motion to set aside Houston's dismissal [Doc. 25].

(Count IV) breach of contract, (Count V) illegal debt collection, (Count VI) negligent misrepresentation, and (Count VII) estoppel.

With regard to origination, the plaintiffs claim that Countrywide unconscionably induced and defrauded them into the loan by misrepresenting the amount of the monthly payment. As for servicing, the plaintiffs claim that BAC breached its implied covenant of good faith and fair dealing and violated the West Virginia Consumer Credit and Protection Act ("WVCCPA") W.Va. Code § 46A-2-122, *et seq.*, by instructing them not to make loan payments, while refusing to evaluate them for a loan modification and repeatedly representing that it would provide an affordable loan modification in lieu of foreclosure.

On the defendants' motion, this Court dismissed both claims against Countrywide and a number of claims against BAC [Doc. 43]. With regard to Countrywide, this Court dismissed the plaintiffs' unconscionable inducement and fraud claims (Counts I and II) as time-barred.[4] (Id. at 16-18). As for BAC, this Court dismissed the plaintiffs' illegal debt collection claim (Count V) as preempted by the National Bank Act ("NBA"), the plaintiffs' negligent misrepresentation claim (Count VI) for failure to plead a special relationship, and the plaintiffs' estoppel claim (Count VII) as more properly taking the form of an equitable defense. (Id. at 21-23).

However, this Court found that the plaintiffs had sufficiently pled the existence of an agency relationship (Count III) between Fannie Mae and BAC, as holder and servicer. (Id. at 14-15). This Court also allowed the plaintiffs' breach of contract claim (Count IV) to

---

[4]Upon reconsideration, this Court instead found that dismissal of the plaintiffs' unconscionable inducement claim against Countrywide was appropriate on its merits. ([Doc. 48] at 7).

proceed based upon a breach of the implied covenant of good faith a fair dealing.  (Id. at 18-20).  Specifically, this Court found that the plaintiffs had sufficiently alleged that BAC, acting as an agent of Fannie Mae, breached the covenant of good faith and fair dealing implied in the Deed of Trust by:  (1) exercising Fannie Mae's discretion to provide a loan modification in bad faith and (2) exercising Fannie Mae's discretion to foreclose in bad faith. (Id.).

After the close of discovery on April 22, 2011, BAC and Fannie Mae (the "defendants") moved for summary judgment on the plaintiffs' remaining claims, agency (Count III) and breach of contract (Count IV) [Doc 63].  In support of their motion, the defendants argue that their failure to grant a loan modification cannot constitute a breach of the DOT because they had no contractual duty to provide the modification under the agreement.  In response, the plaintiffs argue that the defendants breached the covenant of good faith and fair dealing implied in the DOT by instructing them not to make partial payments while representing that assistance was forthcoming and no foreclosure would be instituted for lack of those payments [Doc. 68].  In reply, the defendants contend that the plaintiffs have failed to come forward with evidence of bad faith sufficient to overcome their express right to foreclose [Doc. 69].

A pretrial conference is currently scheduled for June 20, 2011, to be followed by a jury trial on July 12, 2011 [Doc. 26].

## DISCUSSION

## I.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

6

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  **Id.** at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  **Anderson**, 477 U.S. at 249 (citations omitted).

## II.    Analysis

In their motion, the defendants argue that they are entitled to summary judgment on both of the plaintiffs' remaining counts, while the plaintiffs argue that they have presented genuine issues of material fact which preclude summary judgment on either count.  Below, the Court will consider each count, in turn.

### A.      Count IV: Breach of Contract

In Count IV, the plaintiffs allege that the defendants breached the DOT and the

7

implied duty of good faith and fair dealing by: (1) failing to exercise their discretion in good faith to effectuate reasonable and appropriate loss mitigation options before accelerating the loan and pursuing foreclosure; (2) failing to exercise their discretion in good faith to initiate loss mitigation efforts with the plaintiffs when they fell behind; (3) allowing the plaintiffs' delinquency to mount by discouraging payments, while prolonging the loan modification review process; and (4) exercising their discretion to accelerate the loan and pursue foreclosure in bad faith.  ([Doc. 36] at ¶ 55).

In denying judgment on the pleadings for Count IV, this Court concluded that "the plaintiffs ha[d] sufficiently alleged that the defendants exercised their discretion to deny a loan modification and instead seek foreclosure in bad faith."  ([Doc. 43] at 19-20).  In so concluding, the Court found that the plaintiffs' allegation of bad faith constituted the "grounds for recovery" for their breach of contract claim.  (Id. at 19).  The Court also noted that "any argument by the defendants that their express right to foreclose trumps the implied duty to exercise their discretion in good faith [was] properly considered a defense not before th[e] Court on a 12(b)(6) motion to dismiss" and that "upon the completion of discovery, the plaintiffs' burden of presenting a genuine issue of material fact on the issue of bad faith [would] be a heavy one."  (Id. at 20 n.8).

In the instant motion, the defendants contend that they are entitled to summary judgment as a matter of law because the plaintiffs cannot recover on an alleged breach of the covenant of good faith and fair dealing implied in the DOT without presenting a genuine issue of material fact that the DOT was *expressly* breached.  In this regard, the defendants argue that exercising their express right to foreclose cannot constitute a breach of the DOT. For reasons that follow, this Court agrees.

8

### 1.   Implied Covenant of Good Faith and Fair Dealing

In West Virginia, a covenant of good faith and fair dealing is implied in every contract for the purposes of evaluating a party's performance of that contract.  ***Knapp v. American General Finance, Inc.***, 111 F.Supp.2d 758, 767 (S.D. W.Va. 2005); ***Hoffmaster v. Guiffrida***, 630 F.Supp. 1289, 1290 (S.D. W.Va. 1986).  However, "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those [expressly] set out in the contract."  ***Barn-Chestnut, Inc. v. CFM Dev. Corp.***, 193 W.Va. 565, 572, 457 SE.2d 502, 509 (1995).

### 2.   Applicability of Implied Covenant in Context of Loan Modifications

Since the mortgage crisis in 2008, several lawsuits by West Virginia borrowers claiming that their servicer or lender breached the implied covenant of good faith and fair dealing have reached the federal courts.  Typically, these cases run a similar course.  After foreclosure proceedings are instituted instead of working out a loan modification, a borrower files suit against his servicer and lender in state court.  The defendants then remove to federal court and move to dismiss the state complaint, arguing either that West Virginia does not recognize a stand-alone cause of action for breach of the implied covenant of good faith and fair dealing or that their express right to foreclose is dispositive.  Because the instant case has run a similar course, this Court finds it appropriate to consider those decisions before addressing the merits of the pending motion.

#### i.   *Clendenin v. Wells Fargo Bank, N.A.*

In ***Clendenin v. Wells Fargo Bank, N.A.***, 2009 WL 4263506 (S.D. W.Va. Nov. 24, 2009) (Goodwin), the plaintiffs alleged that Wells Fargo breached an express term of their

9

deed of trust by assessing and collecting illegal or unauthorized claims.  The plaintiffs also alleged that Wells Fargo breached the covenant of good faith and fair dealing implied in their deed of trust by interfering with their right to the benefits of the contract.  Based upon these allegations, the plaintiffs asserted a claim for express breach of contract and a claim for breach of the implied covenant of good faith and fair dealing.

After dismissing the first claim without prejudice for lack of specificity, the court addressed Wells Fargo's argument that the second claim should be dismissed because West Virginia does not recognize an independent claim based upon the implied covenant of good faith and fair dealing.  Specifically, the court found that "[b]ecause West Virginia does not permit a stand-alone claim for a breach of the covenant of good faith and fair dealing, this claim will live or die by the [express] breach-of-contract claim . . .."  *Id.* at *5.  Accordingly, the court also dismissed the plaintiff's good faith claim without prejudice.

### ii.    *Warden v. PHH Mortg. Corp.*

In **Warden v. PHH Mortg. Corp.**, 2010 WL 3720128 (N.D. W.Va. Sept. 16, 2010) (Bailey), the plaintiffs received paperwork from PHH suggesting a loan modification.  The documents directed the plaintiffs to make trial payments in June, August, and September 2009, after which time PHH would review the loan for permanent modification.  The plaintiffs made the payments as agreed and after not hearing back from PHH, continued to make payments in the trial amount in October and November 2009.  In December 2009, PHH sent the plaintiffs a letter denying their application for a loan modification and instructing them to pay $1,600.00 to bring his loan current.  Before the end of December 2009, the plaintiffs paid the amount requested.  Nevertheless, in January 2010, PHH sold the plaintiffs' home at foreclosure.  The plaintiffs sued PHH for breach of contract.

10

Viewing the plaintiffs' allegations in a most favorable light, this Court found that the plaintiffs had adequately pled an express breach of contract and a breach of the implied covenant of good faith and fair dealing. *Id.* at *5. First, this Court found that the plaintiffs stated an express breach of contract claim by alleging that PHH failed to fulfill its promise to consider the plaintiffs' loan current upon payment of $1,600.00 in December 2009. *Id.* Second, this Court found that the plaintiffs had sufficiently alleged that PHH had exercised its discretion to deny a loan modification and instead seek foreclosure in bad faith. *Id.* at *6.

### iii.    *Corder v. Countrywide Home Loans, Inc.*

In *Corder v. Countrywide Home Loans, Inc.*, 2011 WL 289343 (S.D. W.Va. Jan 26, 2011) (Copenhaver), the plaintiff signed a loan modification agreement prepared by BAC, paid the "initiation" fee of $1,772, and returned it to BAC on March 15, 2010. A BAC employee verbally confirmed receipt of the agreement and fee on March 16, 2010, and informed the plaintiff that he would receive a loan modification in lieu of foreclosure. Nevertheless, on the next day, BAC foreclosed. The plaintiff sued BAC for breach of contract. BAC moved to dismiss, arguing that it was under no obligation to enter into a loan modification and had the express right to foreclose. The plaintiff conceded that BAC was not required to grant him a loan modification. Instead, relying upon *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535 (4th Cir. 1998), the plaintiff argued that BAC's discretion under the deed of trust was constrained by the implied covenant of good faith and fair dealing.

The court rejected the plaintiff's argument, finding *Virginia Vermiculite* inapplicable because "that case concerned Virginia rather than West Virginia law." *Id.* at *4. "This

11

distinction is significant[,]" the court continued, "inasmuch as 'Virginia contract law recognizes a cause of action for failure to exercise contractual discretion in good faith.'" *Id.* (citing ***Virginia Vermiculite, Ltd. v. W.R. Grace & Co.***, 144 F.Supp.2d 558, 606 (W.D. Va. 2001).  After noting that West Virginia recognizes no analogous cause of action, the court found dispositive that "BAC was within its contractual rights in foreclosing on the property when [the plaintiff] defaulted" and that "the implied covenant 'cannot give contracting parties rights which are inconsistent with those set out in the contract.'" *Id.* (quoting ***Barn-Chestnut***, 457 S.E.2d at 509).  As such, the court dismissed the plaintiff's breach of contract claim as a matter of law.  *Id.*

### iv.    *Spoor v. PHH Mortg. Corp.*

In ***Spoor v. PHH Mortg. Corp.***, 2011 WL 88366 (N.D. W.Va. Mar. 11, 2011) (Stamp), the plaintiff approached PHH after defaulting on her refinance loan and requested a loan modification.  For months, PHH informed the plaintiff that her request was under review and instructed her not to make any partial payments.  After six months, PHH informed the plaintiff that her loan modification request was denied.  The plaintiff sued PHH for breach of contract, arguing that PHH failed to exercise good faith when considering her loan modification request.  PHH moved to dismiss, stating that West Virginia does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing.

The court granted dismissal, agreeing that "West Virginia does not recognize an independent cause of action for a breach of duty of good faith and fair dealing separate and apart from a breach of contract claim."  *Id.* at *4.  After noting that the plaintiff acknowledged her failure to assert a breach of contract claim, the court found dispositive

that the deed of trust did not grant the plaintiff a right to modification.  As the court explained, "because no right to modification was granted in the contract, there is no implied covenant with respect to modification."  *Id.* at *5.  Accordingly, the court dismissed the plaintiff's breach of contract claim for failure to state a claim.

**v.**     ***Koontz v. Wells Fargo, N.A.***

In ***Koontz v. Wells Fargo, N.A.***, 2011 WL 1297519 (S.D. W.Va. Mar. 31, 2011) (Johnston), the plaintiff defaulted on her loan after a divorce from her husband.  The plaintiff contacted Wells Fargo to request a loan modification.  A Wells Fargo employee advised the plaintiff to apply for a HAMP modification, informed the plaintiff that the application process would take three months, and instructed her not to make partial payments during the pendency of her application.  In the meantime, another Wells Fargo employee offered that if the plaintiff made three trial modification payments, she would receive a permanent modification.  The plaintiff made the payments, but Wells Fargo denied a modification.  After denying yet another modification request, Wells Fargo foreclosed on the plaintiff's home.  The plaintiff sued Wells Fargo for breach of contract, alleging that Wells Fargo failed to exercise good faith when considering her loan modification requests.  The plaintiff also alleged that Wells Fargo expressly breached the deed of trust by failing to provide proper notice of foreclosure.  Wells Fargo moved to dismiss, arguing that its express right to foreclose cannot be impeded by the covenant of good faith and fair dealing, and attaching the notices of foreclosure it allegedly sent the plaintiff.

After refusing to consider the notices of foreclosure on a motion to dismiss, the court denied dismissal of the plaintiff's express breach of contract claim.  *Id.* at *7.  Next, the

13

Court called Wells Fargo's argument that its express right to foreclose cannot be impeded by the implied covenant of good faith and fair dealing a "strawman." *Id.* at *8. Instead of arguing that Wells Fargo was obligated to modify her loan, the court explained, the "[p]laintiff contends that, in exercising its contractual discretion to modify or foreclose, Wells Fargo was confined (by the covenant of good faith and fair dealing) to act toward her in a commercially reasonable manner." *Id.* After noting that Wells Faro's alleged practices of discouraging partial payments and covertly seeking foreclosure while assuring modification "may amount to dealing in bad faith," the court emphasized the importance of the relationship between those alleged bad faith actions and the express breach of contract claim. *Id.* Specifically, because the bad faith allegations were related to the allegation that Wells Fargo failed to provide proper notice of foreclosure, the court allowed the bad faith claim to proceed. *Id.*

### vi.    *Mullins v. GMAC Mortg., LLC*

In *Mullins v. GMAC Mortg., LLC*, 2011 WL 1298777 (S.D. W.Va. Mar. 31, 2011) (Faber), the plaintiffs applied to GMAC for a loan modification which was approved the same month. A few months later, the plaintiffs contacted GMAC for an update on their loan modification. This time, GMAC stated that their loan modification was under review, instead of already approved. Though the plaintiffs offered, GMAC instructed them not to make partial payments until its review was complete. Shortly thereafter, the plaintiffs received a notice of foreclosure, which GMAC told them to ignore. After a second notice of foreclosure, the plaintiffs contacted GMAC only to be told that it had no loan modification application for the plaintiffs on file. Nevertheless, GMAC postponed the foreclosure sale. A couple of weeks later, GMAC informed the plaintiffs that their modification application had

14

been denied and that foreclosure would proceed as scheduled.  The plaintiffs sued GMAC for express breach of contract and breach of the implied covenant of good faith and fair dealing.  The plaintiffs' express breach of contract related to a paragraph of the deed of trust stating that United States Department of Housing and Urban Development ("HUD") regulations may limit GMAC's right to foreclose.  The plaintiffs alleged that because GMAC failed to consider loss mitigation alternatives prior to foreclosure, as one HUD regulation requires, GMAC breached that paragraph of the deed of trust.

On these allegations, the court found that the plaintiffs had stated a plausible claim for express breach of the deed of trust.  *Id.* at *2.  Then, citing **Clendenin** without further analysis, the court concluded that it would also allow the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing to proceed.  *Id.* at *3.

### 3.    Applicability of Implied Covenant to Instant Case

From a careful review of the cases outlined above, this Court can identify a few important principles that should be applied to the instant case.  First, West Virginia does not recognize stand-alone a cause of action for failure to exercise contractual discretion in good faith.  *See* **Corder**, 2011 WL 289343 at *4.  Second, a claim for breach of the implied covenant of good faith and fair dealing can only survive if the plaintiff pleads an express breach of contract claim.  *See e.g.,* **Clendenin**, 2009 WL 4263506 at *5 (holding that the bad faith claim "will live or die by the [express] breach-of-contract claim . . ..").  Third, the requisite express breach of contract claim can be based upon a provision in the deed of trust, as in **Koontz** or **Mullins**, or upon a new contract to modify, like in **Warden**.  Finally, absent an express breach of contract claim, the lender's express right to foreclose becomes dispositive.  *See* **Spoor**, 2011 WL 88366 at *5 (explaining that "because no right

15

to modification was granted in the contract, there is no implied covenant with respect to modification.").

Applying these principles to the instant case, this Court concludes that the plaintiffs' breach of contract claim, i.e., that the defendants failed to exercise the discretion granted them in the DOT to grant a loan modification in lieu of foreclosure, fails as a matter of law. Because this claim cannot proceed as a stand-alone cause of action for failure to exercise contractual discretion in good faith, s*ee **Corder***, 2011 WL 289343 at *4, the plaintiffs need to present a genuine issue of material fact that the defendants expressly breached either the DOT or a new contract to modify.  *See **Koontz***, 2011 WL 1297519; ***Mullins***, 2011 WL 1298777; ***Warden***, 2010 WL 3720128.   However, discovery revealed neither type of express breach.[5]  As such, the defendants' express right to foreclose is dispositive in this case because "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those [expressly] set out in the contract."  ***Barn-Chestnut, Inc. v. CFM Dev. Corp.***, 193 W.Va. 565, 572, 457 SE.2d 502, 509 (1995); *see also **Spoor***, 2011 WL 88366 at *5 (explaining that "because no right to modification was granted in the contract, there is no implied covenant with respect to modification.").

Here, the DOT provides that [i]f [a] default is not cured on or before the date specified in the notice, Lender at its option . . . may invoke the power of sale . . .."  (DOT at ¶ 22).  The plaintiffs cannot dispute that they defaulted on the loan and failed to timely cure their default.   Thus, without question, the defendants had an express right to

---

[5]For example, though potentially plausible from the allegations of the Amended Complaint, the plaintiffs were unable to discover evidence of the formation of a new contract to modify or that the defendants failed to provide proper notice of foreclosure under the DOT.

16

foreclose.  In addition, the DOT provides that  "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy."  (Id. at ¶ 12).  As such, none of the defendants' forbearance, including the Home Saver Advance granted or the loan modification reviewed, constituted a waiver of the defendants' express right to foreclose.  Therefore, neither the failure to grant a loan modification nor any non-binding representation made during the review process is actionable as a breach of contract claim as a mater of law.  Accordingly, Count IV (Breach of Contract) should be **DISMISSED**.

      **B.**    **Count III: Agency**

In light of the ruling above, the plaintiffs' agency claim is unsupported by any substantive claim of wrongdoing, and therefore, fails as a matter of law.  Accordingly, Count III (Agency) should be **DISMISSED**.

**CONCLUSION**

For the foregoing reasons, the Court finds that the defendants' Motion for Summary Judgment **[Doc. 63]** should be, and hereby is, **GRANTED**.  Accordingly, the Amended Complaint **[Doc. 36]** is **ORDERED DISMISSED WITH PREJUDICE**, and the above-styled action is **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: June 7, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE